### IN THE CIRCUIT COURT FOR THE STATE OF MARYLAND
### FOR MONTGOMERY COUNTY

Aderonke Ajala )
1702 Summit Place )
Apt 507 )
Washington, DC 20009 )
)
And )
)
Nikki Travis )
3605 Hansberry Court, NE )
Washington, DC 200018 )
)
)
v. ) Case No. 468061-V
)
UNITED EDUCATORS )
A RECIPROCAL RISK RETENTION GROUP ) Jury Trial Demanded
7700 Wisconsin Ave #500 )
Bethesda, MD 20814 )
)
)
*Defendant.* )
)

## COMPLAINT

Plaintiffs Aderonke Ajala and Nikki Travis., hereby submit the following Complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant, United Educators Insurance Risk Retention Group (hereinafter referred to "UE" or "Defendant"). In sum, UE engaged in a practice of terminating older, minority employees in favor of hiring and promoting younger, Caucasian employees. When Plaintiffs raised issues with the way UE was engaged in its hiring and promotion practices, Plaintiffs were terminated. Plaintiffs allege that UE has systemically removed older employees in middle management

1

RECEIVED
JUN 12 2019
Clerk of the Circuit Court
Montgomery County, Md.

positions to replace such employees with younger personnel. In furtherance of these allegations, Plaintiffs herein alleges:

## PARTIES

1. Plaintiff Aderonke Ajala is a Nigerian, African American Female. Ms. Ajala is a religious Christian.

2. Ms. Ajala is over the age of 40.

3. Ms. Ajala is a resident of the District of Columbia.

4. Plaintiff Nikki Travis is an African American, Black Female.

5. Ms. Travis is over the Age of 40.

6. Ms. Travis is a resident of the District of Columbia.

7. United Educators Insurance Risk Retention Group is a Reciprocal Risk Retention Group headquartered at 7700 Wisconsin Avenue, Suite 500, Bethesda MD 20814.

8. United Educators is in the for-profit business of providing various risk insurance products to public and private educational institutions.

9. Although United Educators provides insurance products to educational institutions that promote racial and ethnic equality and detest discrimination; United Educators has fostered an environment within its headquarters where age and other forms of discrimination dominate promotion and employment decisions.

10. Of the nine members of UE's leadership, only one employee is African American.

11. Although United Educators bills its work environment as "United Educators, the preeminent provider of risk management and insurance to educational institutions, offers a dynamic, professional work environment for those who share our values and commitment to excellence. We provide dedicated professionals the opportunity for a fulfilling career in a

growing company that prizes teamwork, quality, innovation, and integrity," the fact is United Educators provides little "opportunities" to older can employees. United Educators operates by promoting younger employees and terminating older employees, thus eliminating the issues and perceived headaches of an older workforce.

12. United Educators has a history of removing older and African American employees to advance its younger workforce and eliminate the need to promote and raise salaries for older, African American employees.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to claims arising under the Maryland Fair Employment Practices Act and the Maryland Code, State Gov't § 20-1202, *et seq.*, for violations of the Montgomery County Code, Section 27-19, *et seq.*

14. This Court has personal jurisdiction over all Defendants based on Maryland Code, Courts and Judicial Proceedings, § 6-102.

15. UE is headquartered in Bethesda, Maryland.

16. UE employed Plaintiffs in Bethesda, Maryland.

17. UE conducts systematic, continuous and significant business in the state of Maryland.

18. Venue is vested in this Court pursuant to Maryland Code, Courts and Judicial Proceedings, § 6-201 because the facts giving rise to this case took place in Bethesda Maryland and Defendants are located in Bethesda, Maryland. Venue in this Court is also proper pursuant to Maryland Code, State Gov't § 20-1202.

## FACTS

19. Ms. Ajala began working for UE as a temporary employee in UE's billing department in or around June, 2011.

20. Due to Ms. Ajala's outstanding performance, Ms. Ajala became a full-time "claims billing coordinator" in October 2011.

21. The claims billing coordinator position is an entry level position in the company.

22. Ms. Ajala is a highly motivated person and self-starter.

23. Ms. Ajala had hopes of growing within the company.

24. Ms. Ajala wanted to be promoted within the company.

25. Ms. Ajala satisfactorily performed the functions of her position such that she was eligible for promotion.

26. With respect to Ms. Ajala's performance, she timely completed work assignments and was instrumental to the functions of the claims department.

27. From 2011 to 2017, Ms. Ajala made multiple inquiries to her supervisors and management regarding promotion opportunities and things that Ms. Ajala could do within the company to be eligible for promotion.

28. Generally speaking, UE afforded Ms. Ajala no promotional opportunities.

29. In July 2017, UE hired a mid-20s employee into the Senior Billing Coordinator role.

30. At the time, Ms. Ajala had the same (or more) experience than the employee and had in-company seniority.

31. After Ms. Ajala was passed up for promotion, Ms. Ajala complained to her first line and second line supervisors.

32. Ms. Ajala reported that she believed UE was hiring and promoting younger employees (based on their age) while bypassing older employees for promotional positions.

33. This complaint constitutes protected activity under the Montgomery County Code, the Maryland Fair Employment Practices Act and the Age Discrimination in Employment Act.

34. Several months later, Ms. Ajala requested to go on leave for a trip to participate in a Nigerian religious ceremony.

35. Plaintiff's supervisors are aware that Ms. Ajala is of Nigerian national origin.

36. Plaintiff's supervisors were aware that Ms. Ajala was traveling to Nigeria and participating in a religious ceremony and taking leave for that purpose.

37. After Ms. Ajala returned from her religious ceremony trip; Ms. Ajala was terminated from employment under false pretenses.

38. Ms. Ajala was terminated from her position due to her prior protected activity, her age, race and national origin.

39. Plaintiff, Nikki Travis ("Travis") was hired by UE on March 11, 2015.

40. Ms. Travis was hired as an "Underwriter III."

41. As an "Underwriter III," Ms. Travis was responsible for making underwriting decision on UE client insurance policies.

42. At the time, Ms. Travis had over 25 years of experience in the insurance business.

43. At the time, Ms. Travis was over the age of 40.

44. Due to Ms. Travis' years' of experience, self-starter attitude and performance within the company, Ms. Travis requested her supervisor to participate in UE's "leadership program."

45. UE's leadership program is a program that is, allegedly, designed to "provide training and opportunities" to employees seeking leadership opportunities and advancement within UE.

46. In reality, the leadership program is only open to UE's younger workforce, as UE has a policy against promoting older employees within the company to leadership positions for certain roles.

47. In 2016, Ms. Travis expressed interest in promotion opportunities within the company.

48. Around the same time, UE announced it would promote two "Underwriter III" employees to the "supervisor level."

49. The promotions come with an increase salary, position title, seniority, and substantially more significant duties and responsibilities.

50. In or around March, 2017, UE selected "Kymberly Mills and Seantice Karianian" for the supervisor positions.

51. Both of these employees are substantially younger than Ms. Travis.

52. Ms. Mills has substantially less experience than Ms. Travis.

53. Ms. Mills, who is approximately 10 years younger than Ms. Travis, demonstrated a preference for younger underwriters as opposed to older underwriters.

54. In an effort to force out older underwriters and advance younger underwriters, Ms. Mills placed Plaintiff on a Performance Improvement Plan, despite the fact that there were no issues with Plaintiff's performance.

55. There were no issues with Ms. Travis' performance.

56. Ms. Travis complained about what she perceived to be discriminatory employment practices by UE.

57. Ms. Travis was completing assignments, staying on top of tasks, and performing up to the standards of an Underwriter III.

58. On October 19, 2017, Ms. Mills terminated Ms. Travis.

59. Ms. Travis' termination was the result of age discrimination and race discrimination.

**COUNT I – DISCRIMINATION (National Origin, Race, Age) IN VIOLATION OF Maryland Code, State Government Article Maryland Code, State Gov't § 20-1202, *et seq.*, for violations of the Montgomery County Code, Section 27-19, *et seq.*; Maryland Fair Employment Practices Act, Md. Code, State Gov't §20-606, *et seq.,* Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.**

60. Plaintiffs hereby incorporate each of the preceding paragraphs as if fully re-stated herein.

61. Plaintiffs have satisfied all administrative exhaustion requirements for Plaintiff's claims under Count I.

62. Plaintiff Ajala received a right to sue letter from the EEOC on or after March 21, 2019.

63. The EEOC mailed the right to sue letter to Ms. Ajala on March 18, 2019.

64. Plaintiffs Ajala and Travis timely filed administrative complaints with the EEOC.

65. More than 180 days have passed since the filing of Plaintiffs' administrative complaints.

66. Defendant discriminated against Plaintiffs in violation of Maryland Code, State Gov't § 20-1202, *et seq.*, for violations of the Montgomery County Code, Section 27-19, *et seq.* and the Maryland Fair Employment Practices Act, Maryland Code, State Gov't §20-606, *et seq.*

67. Defendant discriminated against Plaintiffs in violation of the Age Discrimination in Employment Act.

68. Defendant discriminated against Plaintiffs in violation of Title VII of the Civil Rights Act of 1964.

69. Plaintiffs are members of a protected class.

70. Plaintiffs are Black.

7

71. Plaintiff Ajala is of Nigerian ancestry.

72. Plaintiff Ajala is Christian.

73. Plaintiff Ajala is an older employee under Maryland law. Plaintiff's age is protected under Maryland law.

74. Plaintiff Travis is over the age of 40.

75. Plaintiffs have suffered adverse employment actions because of their protected classes.

76. Plaintiffs were denied employment opportunities, Plaintiffs were disciplined, Plaintiffs were terminated, Plaintiff were given a negative performance evaluation or performance improvement plans, Plaintiffs were denied equal benefits and pay, Plaintiffs were denied employment opportunities that were provided to other similarly situated employees outside of Plaintiffs' protected class.

77. The aforementioned adverse actions adversely affected the terms and conditions of Plaintiffs' employment.

78. The aforementioned adverse actions were the motivated, in whole or in part, by unlawful discrimination.

79. Plaintiffs were replaced with employees outside of their protected classes.

80. At all times relevant to this Complaint, Plaintiffs were successfully performing the functions of their positions.

81. Defendant engaged in unlawful employment practices by treating Plaintiffs differently than Plaintiffs' similarly situated coworkers outside of Plaintiffs' protected classes with respect to the terms and conditions of Plaintiffs' employment.

82. Defendants' actions were willful and malicious.

83. Plaintiff administratively exhausted their remedies prior to filing this suit.

8

84. Plaintiffs filed a claim alleging discrimination with the EEOC. Pursuant to a work-share agreement, this complaint was deemed cross-filed with State and County Administrative Agencies.

85. Plaintiffs have suffered and continue to suffer substantial pecuniary and non-pecuniary damages.

86. Plaintiffs have suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants' actions.

### COUNT II – RETALIATION IN VIOLATION OF Maryland Code, State Gov't § 20-1202, *et seq.*, for violations of the Montgomery County Code, Section 27-19, *et seq.*

87. Plaintiffs hereby incorporate each of the preceding paragraphs as if fully re-stated herein.

88. Plaintiffs engaged in protected activity by opposing discriminatory employment practices to Defendant's employees and Plaintiffs' supervisors.

89. When Plaintiffs voiced the aforementioned protected activity to Defendant, Plaintiffs had the reasonable belief that they was opposing unlawful discriminatory employment practices and/or engaging in protected activity.

90. Defendant and Defendant's agents were aware of Plaintiff's protected activity.

91. Plaintiffs have suffered adverse actions because of their protected activity.

92. Plaintiffs were denied employment opportunities, Plaintiffs were disciplined, Plaintiffs were terminated, Plaintiff were given a negative performance evaluation or performance improvement plans, Plaintiffs were denied equal benefits and pay, Plaintiffs were denied employment opportunities that were provided to other similarly situated employees outside of Plaintiffs' protected class.

9

93. Defendant took the aforementioned adverse actions against Plaintiffs because of their protected activity.

94. Defendant's adverse actions against Plaintiffs were motivated, in whole or in part, by Plaintiffs' protected activity.

95. There is a causal connection between Plaintiff's protected activity and adverse employment actions suffered by Plaintiff.

96. As described more fully above, Defendant engaged in unlawful employment practices by retaliating against Plaintiff for opposing discriminatory employment practices in violation of the Montgomery County Code, the Maryland Fair Employment Practices Act, Title VII and the Age Discrimination in Employment Act.

97. Plaintiffs administratively exhausted their remedies prior to filing this suit.

98. Defendant's actions were willful and malicious.

99. Plaintiffs have suffered and continue to suffer substantial pecuniary and non-pecuniary damages.

100. Plaintiffs have suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands:

A. In the first cause of action, judgment against Defendants in an amount that exceeds $1,000,000 per Plaintiff. Plaintiff Ajala and Travis seek an award of back pay, front pay, compensatory damages, punitive damages and all other available relief for each of their claims.

B. In the Second Cause of Action, judgment against Defendants in an amount that exceeds $1,000,000. Plaintiff Ajala and Travis seek an award of back pay, front pay, compensatory damages, punitive damages and all other available relief for each of their claims.

C. All available injunctive relief, including but not limited to: reinstatement.

D. An order directing Defendant to pay reasonable attorney fees, expert witness fees and costs of this litigation.

E. All other relief the Court deems appropriate.

Dated: June 12, 2019

Respectfully Submitted,

*/s/ Morris Fischer*

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue
Suite 210
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax

*/s/ Daniel Kenney*

Daniel E. Kenney, Esq.
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
PMB #653
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

Respectfully Submitted,

/s/ *Morris Fischer*

Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue
Suite 210
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
*Attorney for Plaintiff*

*Daniel Kenney*

Daniel E. Kenney, Esq.
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
PMB #653
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com